**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Wednesday, the 7th day of March, 2007.

Leon Jermain Winston,                                    Petitioner,

  against       Record No. 052501

Warden of the Sussex I State Prison,                     Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed January 27, 2006, the respondent's motion to dismiss, and petitioner's opposition to the motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Leon Jermain Winston was convicted in the Circuit Court of the City of Lynchburg of capital murder of Anthony Robinson in the commission of robbery or attempted robbery, capital murder of Rhonda Whitehead Robinson in the commission of robbery or attempted robbery, capital murder of Rhonda Whitehead Robinson during the same act or transaction in which another person was willfully, deliberately and with premeditation killed, two counts of attempted robbery, statutory burglary, maliciously discharging a firearm, and five counts of use of a firearm in the commission of a felony. The jury fixed Winston's punishment at death for each of the three capital murder convictions and at seventy-three years imprisonment

for the remaining convictions.  The trial court sentenced Winston in accordance with the jury verdict.  This Court affirmed Winston's convictions and upheld the sentences of death in Winston v. Commonwealth, 268 Va. 564, 604 S.E.2d 21 (2004), cert. denied, ___ U.S. ___, 126 S.Ct. 107 (2005).

In claim (I), petitioner alleges that he is actually innocent of capital murder.  While conceding that this Court's decision in Lovitt v. Warden, 266 Va. 216, 259, 585 S.E.2d 801, 827 (2003), bars consideration of assertions of actual innocence in a petition for a writ of habeas corpus, petitioner contends that Lovitt was wrongly decided.  We disagree.  The Court holds that claim (I) is barred because assertions of actual innocence are outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention.  Lovitt, 266 Va. at 259, 585 S.E.2d at 827.

In claim (II), petitioner relies on an affidavit of Dr. J. Thomas McClintock, a purported expert in DNA analysis, who has analyzed the certificates of analysis, the Department of Forensic Science ("DFS") laboratory notes, the trial testimony, and a September 12, 2005 report of an audit conducted of DFS practices, and alleges generally that the DNA evidence that the Commonwealth introduced against petitioner at trial was scientifically invalid. In claim (II)(A), petitioner relies on both Dr. McClintock's affidavit and on an audit of DFS, which was performed after

2

petitioner's trial and direct appeal, and alleges that the statistical analysis of the DNA evidence introduced at petitioner's trial was "inappropriate" because the analyst "selected only those loci that 'fit' her formulated hypothesis" and inappropriately "disregarded the loci that did not necessarily 'fit' that hypothesis." In claim (II)(B), petitioner relies on Dr. McClintock's affidavit and alleges that the random controls used in analyzing the DNA evidence were flawed. In claim (II)(C), petitioner relies on Dr. McClintock's affidavit and alleges that DFS analysts erroneously interpreted the data, to wit, concluding that certain allelic bands were "stutter" rather than actual alleles of another contributing individual.

The Court holds that to the extent petitioner should have known the basis supporting his claims (II)(A), (II)(B), and (II)(C), before or during trial, claims (II)(A), (II)(B) and (II)(C) are procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

To the extent that petitioner's claims are based upon the audit conducted after trial and direct appeal, the Court holds that claims (II), (II)(A), (II)(B), and (II)(C), are not cognizable in a

3

petition for a writ of habeas corpus. "The writ is available only where the release of the prisoner from his immediate detention will follow as a result of an order in his favor. It is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not affect the lawfulness of his immediate custody and detention." Virginia Parole Bd. v. Wilkins, 255 Va. 419, 420-21, 498 S.E.2d 695, 696 (1998).

In claim (II)(D)(1), petitioner alleges that flaws in the DNA analysis linking petitioner to the murder weapon support petitioner's claim that he is actually innocent of capital murder. The Court holds that claim (II)(D)(1) is barred because assertions of actual innocence are outside the scope of habeas corpus review, which concerns only the legality of the petitioner's detention. Lovitt, 266 Va. at 259, 585 S.E.2d at 827.

In a portion of claim (II)(D)(2), petitioner relies on the affidavit provided by Dr. McClintock and alleges that the Commonwealth knew the DNA profile developed on the murder weapon strongly suggested multiple contributors of DNA, and that the Commonwealth's failure to disclose this fact constituted a violation of the requirement to disclose exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). The record, including motions, orders, exhibits, and the trial transcript, demonstrates that petitioner was provided with the necessary

4

assistance, including access to the DFS case file and the appointment of an expert to conduct an independent review of the DNA examination performed by the DFS. Petitioner does not allege that the Commonwealth withheld information from the file provided to the defense expert, but instead contends that the Commonwealth had reached and reported erroneous conclusions.

The Court holds that this portion of claim (II)(D)(2) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In another portion of claim (II)(D)(2), petitioner alleges that the Commonwealth, in violation of Brady, failed to disclose certain electronic data that would have allowed petitioner to conduct an independent examination of the data, and that had this information been made available to the jury, there is a reasonable probability that Winston "could have been convicted of a lesser offense." The Court holds that this portion of claim (II)(D)(2) is without merit. Petitioner does not identify specifically the electronic data that he claims the Commonwealth should have disclosed and, thus, he cannot demonstrate that the electronic data contained either exculpatory or material information.

In claim (II)(D)(3), petitioner alleges that he was denied the

5

effective assistance of counsel because counsel failed to identify and challenge the errors relating to the DNA evidence enumerated in claims (II)(A), (II)(B), (II)(C), and (II)(D). The Court holds that claim (II)(D)(3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcripts, demonstrates that counsel sought and obtained an independent, expert review of the DFS analysis. Petitioner's court-appointed DNA expert reviewed the Commonwealth's analysis and expressed her disagreement with some of the Commonwealth's expert's conclusions. The Commonwealth's expert testified that the DNA evidence recovered from gloves found discarded in the neighborhood near the scene of the murders was a mixture, which matched DNA samples taken from the petitioner, Kevin Brown and David Hardy. Whereas the Commonwealth's expert testified that the probability was greater than one-in-one billion of matching the DNA evidence from the gloves to a different group of three people, the defense expert testified that "the probability of randomly selecting an individual out of the African-American population that would be included . . . for [] evaluation was one in 195." Furthermore, petitioner's own expert testified that the only area of the DFS conclusion with which she disagreed concerned the gloves. Thus, petitioner has failed to show that counsel's performance was

6

deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In a portion of claim (III), petitioner alleges that the Commonwealth committed prosecutorial misconduct in knowingly presenting the false testimony of Marty Campbell to the grand jury. Campbell testified to the grand jury that petitioner said he shot "the woman, three times in the face," and that "after Kevin shot the guy," petitioner said he "had to cap [the woman]." Petitioner claims that petitioner did not speak to Campbell and Campbell never spoke to Kevin Brown about these crimes. According to petitioner, Campbell had previously told investigators that none of Campbell's information about the crimes came from either petitioner or Brown.

The Court holds that Code §§ 8.01-654.1 and 8.01-654(B)(2) bar consideration of this portion of claim (III). Code § 8.01-654.1 requires a petition for a writ of habeas corpus filed by a person sentenced to death to be filed within 60 days of the "denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of Supreme Court of Virginia on direct appeal." The Supreme Court of the United States denied petitioner's petition for a writ of certiorari on October 3, 2005; thus, he had until December 2, 2005 to file a petition for a writ of habeas corpus in this Court. Petitioner filed an oversized petition for writ of

7

habeas corpus (which he categorized as "prophylactic") and this Court twice directed him to file a petition for writ of habeas corpus that complied with this Court's rules. On January 27, 2006, petitioner filed the instant petition for a writ of habeas corpus. In an order dated February 28, 2006, this Court accepted the January 27th petition only with respect to those claims that were also raised in the oversized petition for a writ of habeas corpus filed on December 2, 2005. This portion of claim (III) was untimely filed because it was not included in the oversized petition for a writ of habeas corpus filed in this Court on December 2, 2005. In addition, as the facts which support this allegation were known to petitioner at the time he filed his oversized petition on December 2, 2005, Code § 8.01-654(B)(2) also bars our consideration of this portion of claim (III).

In another portion of claim (III), petitioner alleges that the Commonwealth committed prosecutorial misconduct in knowingly presenting false testimony from Nate Rorls that petitioner called Rorls and confessed to killing the victims. Petitioner contends that Rorls' testimony actually indicated that petitioner called Rorls and confessed to the murders before they took place and that Rorls testified falsely that he first notified the Commonwealth about this telephone call only "a couple days" before trial. Petitioner contends further that the Commonwealth knew this

8

testimony was untruthful because investigators asked Rorls about the call during an interview five months earlier. The record, including the trial transcript, demonstrates that defense counsel was aware of Rorls' earlier statement to the police and used it in cross-examination of Rorls.

The Court holds that this portion of claim (III) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In another portion of claim (III), petitioner alleges that the Commonwealth committed prosecutorial misconduct in knowingly creating false impressions regarding Rorls' negotiations for a plea agreement in connection with federal drug charges in exchange for his testimony against petitioner at petitioner's capital murder trial. Petitioner claims that the Commonwealth concealed its awareness of federal prosecutors' decision to delay the finalization of Rorls' plea agreement until after petitioner's trial. Petitioner maintains that the delay prevented the jury from learning about Rorls' plea agreement, wherein he would serve less than three years of incarceration, as opposed to the fourteen years he told the jury on direct examination that he faced. The record demonstrates that petitioner was aware of the ongoing negotiations

9

and that counsel elicited testimony from Rorls that he actually faced "twenty-five [years] to life."

The Court holds that this portion of claim (III) is factually without merit. The petitioner has failed to allege facts that establish how the Commonwealth violated its obligation to disclose impeachment evidence. The record established that petitioner was aware of ongoing plea negotiations with federal prosecutors and that the negotiations were not completed at the time Rorls testified. Petitioner used this information in his cross-examination of Rorls to establish that Rorls expected to receive favorable treatment as a result of his testimony.

In another portion of claim (III), petitioner asserts that Rorls subsequently received treatment better than Rorls predicted while testifying. In support of this claim, petitioner notes that, following his testimony against Winston, Rorls pled guilty to conspiracy to distribute 50 grams or more of cocaine and instead of serving "twenty-five [years] to life," Rorls was released in less than three years. Petitioner contends that such treatment proves the Commonwealth engaged in prosecutorial misconduct. The Court holds that this portion of claim (III) is factually without merit. The record, including the trial transcript and the exhibits submitted in support of the petition, demonstrates that the Commonwealth properly disclosed that Rorls was in negotiations with

10

federal prosecutors and that Rorls' sentence reduction was the result of his cooperation in 2003 and in 2004 with federal authorities and his testimony in petitioner's case.

In another portion of claim (III), petitioner alleges that the Commonwealth committed prosecutorial misconduct in creating the false impression that petitioner's knowledge of victim Rhonda Robinson's pregnancy was solely attributable to the fact that he was the one that killed her. Petitioner claims the Commonwealth failed to elicit during re-direct examination of Rorls that he stated six months before trial that petitioner knew about the pregnancy from Tywan Turner, the father of Rhonda Robinson's unborn baby. Furthermore, petitioner contends the Commonwealth also knew, from Campbell's grand jury testimony, that Rhonda Robinson's pregnancy was public knowledge before trial.

The Court holds that, to the extent petitioner is challenging the admission of evidence of Rhonda Robinson's pregnancy, this portion of claim (III) is barred because this issue was raised and decided in the trial court and on direct appeal from the criminal conviction and, therefore, petitioner cannot raise it in a petition for a writ of habeas corpus. Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 495, 496 (2003). To the extent petitioner is challenging the Commonwealth's failure to elicit from Rorls his prior speculation that Winston learned of the pregnancy from Tywan

11

Turner, this portion of claim (III) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In another portion of claim (III), petitioner alleges that the Commonwealth committed prosecutorial misconduct when, in spite of its knowledge that Tywan Turner was in the City of Lynchburg on the night of the murders, it argued to the jury that Turner could not have committed the murders because the evidence at trial showed that Turner was in Washington, D.C. and not in Lynchburg on the night of the murders. Petitioner submits that Turner told police on the day after the murders that he was in Lynchburg, at home with his girlfriend, on the night of the murders. Second, petitioner contends that the Commonwealth knew that Patty Whitehead, the sister of Rhonda Robinson and mother to Turner's two children, told police that Turner's son had been visiting Turner, and that Turner returned the child to Patty Whitehead in Lynchburg on the day of the murders. Third, petitioner further contends that Rorls told police and prosecutors that Turner was "down there in Lynchburg" and that Turner brought Winston to Lynchburg from Washington, D.C. so Winston could "retaliate" against individuals who had stolen a safe from his home.

12

The Court holds that this portion of claim (III) is procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In a footnote, petitioner alleges that he was denied the effective assistance of counsel with respect to each of the claims of prosecutorial misconduct raised in claim (III) because counsel had failed "to investigate and present the claims." The Court holds that petitioner's allegation of ineffective assistance of counsel with respect to petitioner's claim (III) does not satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner has failed to allege with particularity any prejudice he sustained as a result of counsel's alleged failures or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(A), petitioner alleges violations of his Sixth, Eighth, and Fourteenth Amendment rights to an impartial jury because several jurors "were exposed to extraneous influences during the course of the trial." Juror Archer Caldwell reported that four jurors were approached during recesses by members of the victims' families, who made statements to these jurors that they

13

should convict petitioner and sentence him to death. The trial court questioned each contacted juror and determined that none of those jurors felt threatened or intimidated and that the contact would not affect their deliberations. The record demonstrates that petitioner raised this argument on direct appeal but that Rule 5:25 prevented this Court from considering the argument because it had not been presented to the trial court.

The Court holds that claim (IV)(A) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In claim (IV)(B), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to make a timely motion for a mistrial as a result of the victims' families contact with the jurors. Petitioner argues that counsel failed to request that the trial court examine the entire jury panel about the extraneous contact, that counsel should have ensured petitioner's presence during the in-chambers voir dire of the four jurors, and that counsel should have known about and argued during trial the Court of Appeals decision in Scott v. Commonwealth, 11 Va. App. 516, 521-23, 399 S.E.2d 648, 651-52 (1990), that jurors cannot be expected to admit that they violated their oaths of

14

office, that a defendant is entitled to be tried by no fewer than twelve impartial jurors, and that a new trial must be granted if there is the possibility that the jury's verdict was improperly influenced. Instead, the affidavit of counsel reveals that trial counsel did not know about the decision in Scott until after trial, when he cited it to the trial court in a post-trial motion, which petitioner claims the trial court denied as having been untimely filed.

The record, including the post-verdict sentencing transcript, demonstrates that the trial court denied petitioner's motion on the grounds that the court had examined each of the jurors who stated they had been approached, the trial court was satisfied with their answers, and the trial court remained satisfied that petitioner was not prejudiced or harmed. The Court holds that claim (IV)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the affidavit of counsel and the trial transcript, establishes that each juror testified that the contact with third parties did not intimidate or frighten them and would not influence their deliberations. The record further demonstrates that counsel made a tactical decision not to move for a mistrial after discussing the issue with petitioner. Counsel believed that at least one specific juror would not vote for a death sentence and that they would

15

likely not get another juror like her at a new trial, and that counsel thought, "the trial was leaning our way." Thus, petitioner has failed to show that counsel's performance was deficient or that there is a reasonable probability that a motion for mistrial would have been granted and that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (V)(A), petitioner alleges that he was denied his right to be present during critical stages of trial, to wit, when the trial judge and the Commonwealth's Attorney examined four jurors in the court's chambers. The Court holds that claim (V)(A) is procedurally defaulted because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In claim (V)(B), petitioner alleges that he was denied the effective assistance of counsel because trial counsel failed to ensure petitioner's presence during the examination of the four jurors. Petitioner argues that had he witnessed the reactions of the jurors, he would not have agreed to forego a motion for a mistrial and that the motion likely would have been granted.

The Court holds that claim (V)(B) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to establish that even

16

if he had asked counsel to seek a mistrial, one would have been granted. The testimony of the jurors regarding the outside contact proved there was no basis for a mistrial and the trial judge noted his satisfaction with the jurors' responses. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the outcome of the proceeding would have been different.

In a portion of claim (VI)(A), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to cross-examine Nate Rorls concerning continuances of Rorls' criminal trial in federal court. Petitioner claims that counsel should have cross-examined Rorls about the fact that any leniency he would receive from federal prosecutors depended on his testimony at petitioner's trial and should have cross-examined Rorls concerning the fact that Rorls' federal trial was continued and would not be held until after Rorls testified at petitioner's trial. Petitioner contends that this fact "contradicted Rorls' testimony that the capital murder case was a small factor in his anticipated federal deal."

The Court holds that this claim satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial

17

transcript, establishes that counsel cross-examined Rorls about his discussions with the United States Attorney and the Drug Enforcement Agency regarding his knowledge about petitioner's case and how that knowledge could benefit Rorls. Petitioner has not articulated how additional information concerning the details of Rorls' potential agreement with federal prosecutors would have affected his credibility. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (VI)(A), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to effectively cross-examine Rorls about the existence and timing of alleged telephone calls between Rorls and petitioner. Petitioner alleges that Rorls gave conflicting statements and testimony as to when petitioner called him and confessed to the crimes and, under both versions of his account, Rorls claimed to have received the telephone call before the victims died.

The Court holds that this portion of claim (VI)(A) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The Commonwealth's evidence proved that petitioner saw Rorls the day after petitioner called Rorls; however, neither in his statement to police nor in

18

his trial testimony did Rorls state what day he received the phone call or what day he met with petitioner. Rorls noted only that he received the phone call after the killings and that on the day after he received the phone call he spoke with petitioner in person in Woodbridge, Virginia, and in Maryland. Furthermore, the information provided by Rorls corroborated the account given by Niesha Whitehead. Additionally, on direct appeal, petitioner conceded that he was present when the murders took place. Therefore, any discussion of the exact time of day petitioner made the phone call has little bearing on the truthfulness of Rorls' testimony that petitioner told Rorls he had "slumped" some people. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (VI)(A), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to cross-examine Rorls about the conflict between his statement that petitioner told him that petitioner left the murder weapon at the victims' home and the Commonwealth's evidence, which showed that police recovered the weapon from a different home. Petitioner also alleges that he was denied the effective assistance of counsel because counsel failed to question Rorls about his

19

failure to alert law enforcement about petitioner's confession for six months and then only after Rorls was arrested and charged with federal drug crimes.

The Court holds that this portion of claim (VI)(A) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Rorls' statement to police and the trial transcripts, demonstrates that there was no "glaring contradiction" because there were two guns involved in the killings. In both his statement to police and in his trial testimony, Rorls claimed that petitioner showed one of the guns, a 9-millimeter handgun, to Rorls. The trial transcript demonstrates that petitioner then took the gun to Robin Wilson to keep in his apartment where police later recovered it. When read in context, it is clear that, in his statement to police, Rorls was referring to the second gun, which Rorls believed, based upon his conversation with petitioner, had been left in the victims' house, but which actually had been found at a location near the house. The record demonstrates that the other gun used in the murders, a .38 caliber handgun, was found in Lynchburg near the victims' residence and near the area where articles of clothing worn by petitioner's co-defendant were found. Counsel's failure to cross-examine a witness concerning a contradiction that does not exist is not deficient performance. Thus, petitioner has failed to

20

demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (VI)(A), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate Rorls' statements. Petitioner bases this claim on Rorls' trial testimony that "Pego," petitioner's cousin, was present during petitioner's confession to Rorls in Woodbridge, Virginia. Petitioner contends counsel erred because "counsel never asked [petitioner] who was present at the house, and never identified [Peyton] Carter before trial." Petitioner alleges that Peyton Carter is the cousin "Pego" who was present in Woodbridge. Carter submitted an affidavit wherein he stated that he would have testified that he was with petitioner the entire time petitioner was at the house in Woodbridge, Virginia, that petitioner and Rorls never had a private conversation in that house, and that Carter never heard petitioner mention the murders and never saw petitioner show anyone a gun.

The Court holds that this portion of claim (VI)(A) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Carter's affidavit, establishes only that Carter did not hear or see petitioner confess to the crimes. Essentially, petitioner

21

claims that counsel's assistance was ineffective because counsel failed to present the testimony of this witness who did not see the gun or hear the confession. As such, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In another portion of claim (VI)(A), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to present the testimony of Joe Lewis, who would have testified that he was present at the time and location of petitioner's alleged in-person confession to Rorls and that he did not hear petitioner confess, nor did Rorls ever tell him that petitioner had confessed to the murders.

The Court holds that this portion of claim (VI)(A) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Lewis' affidavit, establishes only that Lewis did not hear or see petitioner confess to the crimes and that Rorls did not relay petitioner's confession to him. Essentially, petitioner claims that counsel was ineffective for failing to present testimony of a witness who did not see or hear anything. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's

22

alleged error, the result of the proceeding would have been different.

In another portion of claim (VI)(A), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to properly address testimony regarding Rhonda Robinson's pregnancy at the time of her death. The record establishes that the trial court ruled that it would allow testimony regarding Rhonda Robinson's pregnancy "if the witness can testify as to what the defendant told him about the appearance." Rorls testified on re-direct examination "that [Robinson] was pregnant." Petitioner claims that Rorls never testified about comments made by petitioner about Rhonda Robinson's appearance and that counsel should have objected or moved for a mistrial at that point of the proceedings because the testimony was irrelevant, inflammatory, and prejudicial.

The Court holds that this portion of claim (VI)(A) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and this Court's opinion on direct appeal, demonstrates that although Rhonda Robinson's pregnancy may not have been relevant before cross-examination, upon cross-examination it became relevant and admissible and was properly elicited on re-direct examination. Petitioner, therefore, cannot establish that

23

an objection would have been successful. Furthermore, any chance that the information would have been improperly prejudicial was negated when counsel, on cross-examination, elicited testimony from Rorls that at least one other person knew about Rhonda Robinson's pregnancy. This testimony undermined the Commonwealth's contention that only Rhonda Robinson's killer knew about the pregnancy, that petitioner knew about the pregnancy, and that, therefore, the petitioner was Rhonda Robinson's killer. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim (VI)(B), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to offer "affirmative evidence of their theory" that there was "a viable alternate suspect," Tywan Turner.

The Court holds that this portion of claim (VI)(B) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel attempted to present evidence that Rhonda Robinson's sister, Angela Whitehead, had told Investigator Carson that Turner kept a 9-millimeter handgun in his car. Angela Whitehead surprised counsel by vehemently denying

24

having made that statement to Carson. Counsel attempted to refresh Angela Whitehead's recollection and she maintained that she never saw a gun and never told anyone about a gun. Moreover, counsel presented evidence that Turner was the primary drug supplier to Anthony Robinson, a suspected drug dealer, that Anthony Robinson was under indictment for drug trafficking, and that Anthony Robinson had been released from custody shortly before his murder. Petitioner does not identify any additional evidence which counsel could have presented to demonstrate that Turner was "a viable alternate suspect." Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VI)(C), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to call Patty Whitehead, Angela Whitehead's sister and mother of two of Turner's children, to testify in furtherance of this "alternate suspect theory." Petitioner claims that Patty Whitehead would have testified that Turner dropped off the children at her home in Lynchburg around midnight on the night of the murders, placing him in the city and without the company of his children. She also would have testified, according to petitioner, that Turner supplied Anthony Robinson with drugs.

25

The Court holds that claim (VI)(C) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the transcript of Patty Whitehead's statement to law enforcement, establishes that she had "no idea" if Turner killed the victims. Moreover, her statement that Turner was in Lynchburg to drop off the children at her house is not evidence of his involvement in the crimes. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VI)(D), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to call Ann Marie Lewis as a defense witness. Petitioner contends that Lewis was concerned that Patty Whitehead influenced Niesha Whitehead's statement to police. Petitioner bases this claim on the notes from a police interview with Lewis. According to the notes, it appears that Lewis was present when Niesha Whitehead told the police that the men were masked. Later, however, Patty Whitehead told police that Niesha had told her that one of the assailants was light-skinned, with braided hair and a tattoo of a dog on his arm.

The Court holds that claim (VI)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner does not proffer an affidavit

26

from Lewis to establish that she would have testified as he contends. Furthermore, petitioner does not articulate how the two statements are inconsistent. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VI)(E), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to confront Angela Whitehead with "important information contained in her recorded interview with Investigator Carson." The record, including the trial transcript, establishes that counsel subpoenaed Angela Whitehead to testify about statements she made immediately after the murders that tended to implicate Turner in the crimes. On direct examination, however, Angela Whitehead surprised defense counsel by denying having made any of the statements attributed to her.

The Court holds that claim (VI)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, establishes that counsel did confront Angela Whitehead with her statement to Investigator Carlson after she denied making the statement. After giving Angela Whitehead the opportunity to refresh her recollection by reviewing her prior statement to

27

Carlson, the witness continued to insist that she had never seen the inside of Turner's car and that she had never seen Turner hold a weapon. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VI)(F), petitioner alleges that he was denied the effective assistance of counsel because counsel failed to call Thomas Whitehead, Rhonda Robinson's brother, as a defense witness. Petitioner alleges that Thomas Whitehead made a statement to police and would have testified that Rhonda Robinson's daughter, Niesha, told him that she did not witness the actual shootings. Petitioner claims that Thomas Whitehead also would have testified that his sister, Patty Whitehead, had discussed the events with Niesha, which, petitioner contends, would have supported his theory that Patty Whitehead was attempting to deflect suspicion from Turner, the father of two of her children.

The Court holds that claim (VI)(F) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including transcripts and notes of Thomas Whitehead's statements to police, establishes that he told police that Niesha, Rhonda Robinson's daughter, had told him and Patty Whitehead that she had seen her mother get shot.

28

Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VI)(G), petitioner alleges he was denied the effective assistance of counsel because counsel failed to call Investigator Gearhardt in order to demonstrate to jurors that police ignored Turner as a possible suspect in the murders despite their knowledge that Turner was in Lynchburg on the night of the murders, that he had a motive to murder Anthony Robinson, that Turner owned guns, and that Turner matched the general physical description given by Niesha Whitehead, the sole eyewitness to the murders. Petitioner claims that Turner, by his own admission to police, knew that Anthony Robinson had been incarcerated the weekend before his death and that Turner had seen Anthony Robinson within days of his murder.

The Court holds that claim (VI)(G) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record establishes that counsel presented evidence that Turner was concerned that Anthony Robinson would implicate him in drug trafficking and that Turner had guns. The jury could have inferred that Turner was involved in the killings. Further, the record establishes that petitioner admitted

29

he was present at the scene at the time of the murders and he was identified as the shooter by the tattoo on his arm. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VII)(A), petitioner alleges that the Commonwealth made several misstatements of fact during its closing argument at the conclusion of the guilt phase of petitioner's trial. First, petitioner claims that the Commonwealth improperly referred to petitioner as "Mr. No Name," whom Niesha Whitehead identified as the person who shot her mother. Second, petitioner claims that the Commonwealth improperly argued in closing that Niesha's testimony proved "that the two men had guns." Third, petitioner claims that the Commonwealth improperly argued in closing that the results at each locus in petitioner's DNA profile matched the results at the corresponding locus on the sample taken from the murder weapon.

The Court holds that claim (VII)(A) is procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In a portion of claim (VII)(B), petitioner claims that he was

30

denied the effective assistance of counsel because counsel failed to object to the Commonwealth's misstatement that petitioner was "Mr. No Name." Petitioner contends that the prosecutor's reference to petitioner as "Mr. No Name" is a misstatement because Niesha had identified "Mr. No Name," as a black-clad black male and the Commonwealth had introduced into evidence petitioner's black sweatshirt with white stripes on the arms and Niesha had described "Mr. No Name's Friend" as wearing black with white stripes.

The Court holds that this portion of claim (VII)(B) satisfies neither the "performance" nor the "prejudice" prongs of the two-part test in Strickland. The record, including the trial transcript, establishes that Niesha also testified that "Mr. No-Name" bore a tattoo of a dog on his arm, and that petitioner bore a tattoo of a dog on his arm. On direct appeal, petitioner did not deny that he was present at the shootings and the record demonstrates that he was the only criminal actor bearing a tattoo on his arm. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim (VII)(B), petitioner claims that he was denied the effective assistance of counsel because counsel failed to object to the Commonwealth's misstatement that Niesha

31

Whitehead's testimony proved that both assailants had guns. The Court holds that this portion of claim (VII)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test in Strickland. The record, including the trial transcript, establishes that counsel elicited from Niesha Whitehead on cross-examination that only one of the men had a gun. Niesha positively identified the man who shot her mother as the man with a tattoo on his arm. In addition, Niesha's mother was shot three times with a 9-millimeter handgun, the gun which petitioner is identified as having possessed. Anthony Robinson, however, was shot eight times: seven times with the 9-millimeter handgun and once with a .38 caliber handgun. No evidence was presented that petitioner ever possessed the .38 caliber weapon. Consequently, objecting to the Commonwealth's argument that the second assailant also had a gun would have been without effect. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim (VII)(B), petitioner claims that he was denied the effective assistance of counsel because counsel failed to object to the Commonwealth's misstatement that petitioner's DNA matched the DNA recovered from the murder weapon at the TPOX, Penta D, and the CSF1PO loci because the results of the DNA testing were

32

inconclusive for both the petitioner and the gun.  Petitioner contends that the prosecutor misstated the record because, in fact, no result was obtained at the TPOX locus for either the gun or the petitioner and because an inconclusive result does not constitute a "match."

The Court holds that this portion of claim (VII)(B) satisfies neither the "performance" nor the "prejudice" prongs of the two-part test in Strickland.  The record, including the trial transcript, demonstrates that there was overwhelming evidence of petitioner's DNA on the weapon, and that the evidence introduced at trial established that the likelihood of another person being the contributor of the DNA on the weapon was greater than one in six billion.  Any error in the prosecutor's argument concerning whether there were inconclusive results, as opposed to no results at the TPOX locus, would not have been prejudicial in light of the conclusions to which the experts testified concerning the DNA match and the trial court's instruction that closing argument is not evidence.  As to the prosecutor's argument that the other loci contained inconclusive results for both the gun and the petitioner, the evidence adduced at trial supports the prosecutor's statements. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding

33

would have been different.

With respect to petitioner's claim that he was denied the effective assistance of counsel because counsel failed to object to the Commonwealth's argument that an "inconclusive" finding on the TPOX locus from both petitioner's DNA sample and the sample from the murder weapon constituted a positive DNA match, the Court holds that this portion of claim (VII)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test in Strickland. The record, including the trial transcript and the testimony of the Commonwealth's DNA expert, establishes that there was overwhelming evidence of petitioner's DNA on the weapon, even if petitioner's DNA was not on the specific locus that was mentioned during closing. Petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claims (VIII)(A) and (VIII)(B), petitioner alleges that his execution is barred by Atkins v. Virginia, 536 U.S. 304 (2002), because he was diagnosed with mental retardation at age sixteen and allegedly meets the statutory definition for mental retardation as prescribed in Code § 19.2-264.3:1.1. In support of this claim, petitioner relies on a cover page from a Fairfax County Public Schools Special Education Eligibility Form that indicates that

petitioner was eligible to receive special education services after school officials determined that he was disabled due to mild mental retardation. Petitioner additionally submits an affidavit indicating that the test scores and data relied upon to reach this determination are unavailable.

The Court holds that claims (VIII)(A) and (VIII)(B) are not cognizable in a petition for a writ of habeas corpus, as these non-jurisdictional issues could have been raised at trial and on direct appeal. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In claim (VIII)(C), petitioner alleges he was denied the effective assistance of counsel because counsel unreasonably failed to present evidence of petitioner's mental retardation, including petitioner's school record diagnosing his mental defects and evidence of the "Flynn Effect," a multiplier that petitioner asserts must be accounted for in calculating a person's true intelligence quotient (IQ) score.

The Court holds that claim (VIII)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the evidence presented at trial and the documents upon which petitioner now relies, demonstrates that petitioner was administered three standardized tests for measuring intellectual functioning. Petitioner achieved full-scale scores of 77, 76, and 73 on three

administrations of the Wechsler Intelligence Scale for Children-Revised.  While petitioner offered evidence that he was once described as "mildly mentally retarded" for the purposes of special education eligibility, the definitions of mental retardation provided by petitioner demonstrate that for special-education eligibility, a candidate may, nonetheless, have an IQ score above 70.  Furthermore, petitioner offers no objective data in support of his claim of mental retardation.  The legislature has defined mental retardation as:

> [A] disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills.

Code § 19.2-264.3:1.1(A).

This Court has previously held that the maximum score for a classification of mental retardation is an I.Q. score of 70.  See Johnson v. Commonwealth, 267 Va. 53, 75, 591 S.E.2d 47, 59 (2004), vacated on other grounds, 544 U.S. 901 (2005).  Petitioner provides no documentation that he was diagnosed as being mentally retarded before the age of 18 in accordance with the legal definition of mental retardation established by the legislature.  Thus, petitioner has failed to demonstrate that counsel's performance was

36

deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (VIII)(D), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present evidence about petitioner's subaverage intellectual functioning. Petitioner contends that there was abundant evidence of his low functioning and its impact on his life.

The Court holds that claim (VIII)(D) satisfies neither the "performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the exhibits admitted at trial, demonstrates that counsel moved into evidence copies of four different psychological evaluations made of petitioner in 1987, 1990, 1994 and 1995. These reports included the following findings: petitioner "is a youngster of mentally deficient to average intelligence" with "functional deficits . . . evidenced in short and long term auditory memory, visual memory, visual motor integration, visual sequencing, and perception and integration of part-whole relationships;" petitioner had "extreme problems maintaining attention and effort;" "declining" verbal scores over the years; and "many emotional concerns resulting from his abandonment and rejection from various family members." Petitioner does not identify the substance of any

additional evidence he contends counsel should have presented and does not explain how such evidence would not have been cumulative. Furthermore, petitioner does not allege how the presentation of this evidence would have affected the proceedings. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate and present available mitigation evidence. Petitioner alleges that counsel failed to investigate his immediate family's criminal activity during his formative years and that counsel failed to interview or present for the jury's consideration petitioner's schoolteachers, psychologist, counselors and social workers, who observed the impact petitioner's exposure to his family environment had on him. Petitioner alleges that counsel failed to interview other children in petitioner's family, who also were exposed to the adults' criminal activity, and failed to review the court files from the prosecutions of petitioner's mother and grandmother. Petitioner contends it was unreasonable for counsel to present psychological reports and "hope" the jury would read them.

The Court holds that claim (IX) satisfies neither the

38

"performance" prong nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel presented the testimony of petitioner's mother, Connie Winston, that she drank alcohol and used PCP, marijuana and cocaine nearly every day while she was pregnant with petitioner. Petitioner's grandmother, Mary Berrios, testified that petitioner, while he was a child in Berrios' care, accompanied Berrios on various shoplifting capers and observed his grandmother stealing merchandise. Counsel moved into evidence copies of four different psychological evaluations made of petitioner in 1987, 1990, 1994 and 1995. These reports included the following findings: petitioner "is a youngster of mentally deficient to average intelligence" with "functional deficits . . . evidenced in short and long term auditory memory, visual memory, visual motor integration, visual sequencing, and perception and integration of part-whole relationships;" petitioner had "extreme problems maintaining attention and effort;" "declining" verbal scores over the years; and "many emotional concerns resulting from his abandonment and rejection from various family members."

Petitioner does not articulate how the evidence he claims counsel failed to present would not have been cumulative, given the evidence that counsel did present in mitigation. Furthermore, petitioner does not allege that the jury disregarded the trial

39

court's instruction to consider the evidence in aggravation and in mitigation and to review the additional exhibits. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In a portion of claim (X), petitioner alleges that the Commonwealth made improper statements during its closing argument in the sentencing phase of petitioner's trial. First, petitioner claims that the Commonwealth violated his right to due process by referring to petitioner as a "pitbull." Second, petitioner claims that the Commonwealth's request of the jury for "justice for our community" was improper in that it called for the jury to sentence petitioner on behalf of the community rather than on the law and the facts presented.

The Court holds that this portion of claim (X) is procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Slayton, 215 Va. at 29, 205 S.E.2d at 682.

In another portion of claim (X), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object to the Commonwealth's improper statements during the

40

closing argument of the sentencing phase of petitioner's trial, as set forth in the first portion of claim (X).

The Court holds that this portion of claim (X) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the prosecutor's statement during closing regarding "justice for the community," was not improper. This Court has previously held that "[w]hile considerations of deterrence should not be the basis for a finding of guilt of the offense, such considerations may be argued in connection with the punishment to be assessed for the crime." Wilkins v. Commonwealth, 253 Va. 156, 157, 482 S.E.2d 837, 838 (1997) (citing Payne v. Commonwealth, 233 Va. 460, 468, 357 S.E.2d 500, 505, cert. denied, 484 U.S. 933 (1987)). Furthermore, not every improper argument amounts to a denial of due process.

> The relevant question is whether the prosecutors'
> comments "so infected the trial with unfairness as to
> make the resulting conviction a denial of due process."
> Donnelly v. DeChristoforo, 416 U.S. 637 (1974). Moreover,
> the appropriate standard of review for such a claim on
> writ of habeas corpus is "the narrow one of due process,
> and not the broad exercise of supervisory power." Id. at
> 642.

Darden v. Wainwright, 477 U.S. 168, 181 (1986). See also Bennett v. Angelone, 92 F.3d 1336, 1346-47 (4th Cir. 1996) (religiously loaded closing argument, while "highly improper and deserve[d]

41

condemnation" did not render death sentence constitutionally infirm). Petitioner has not demonstrated that in the context of the trial, considering all of the evidence and the totality of the arguments, the prosecutor's reference to petitioner as a "pitbull" rendered the death penalty constitutionally infirm. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (XI), petitioner alleges that the claims concerning petitioner's constitutional right to effective assistance of counsel, when considered cumulatively, demonstrate that "trial counsels' performance and the resulting prejudice deprived Winston of constitutionally guaranteed effective assistance of counsel, and requires that his convictions and/or sentences be vacated."

The Court holds that petitioner's claim (XI) is without merit. As addressed previously, petitioner has failed to demonstrate prejudice as a result of counsel's alleged errors. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz v. Warden of the Sussex I State Prison, 267 Va. 318, 340, 593 S.E.2d 292, 305, cert. denied, 542 U.S. 953 (2004).

Upon consideration thereof, petitioner's "motion for leave to depose the department of forensic science," "motion for funds to hire a psychologist or psychiatrist," "motions for appointment of a DNA expert and discovery of electronic data," and "motion for discovery" are denied.

Accordingly, for the reasons stated, the petition is dismissed.

A Copy,

Teste:

Patricia L. Harrington, Clerk

43